UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN WOODSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-2107 |
| | § | |
| HALLIBURTON, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the court is Woodson's motion for extension of time to file notice of appeal, or, in the alternative, motion to reopen the time to file an appeal. Dkt. 40. Upon consideration of the law and the facts, the court finds that Woodson's motion should be DENIED.

## BACKGROUND

On June 22, 2006, Woodson filed a complaint against the defendants for injuries he sustained while driving a truck in a civilian convoy in Iraq.[1] Upon consideration of the facts and the law underlying Woodson's claim, the court found that the case presented a nonjusticiable political question. Dkt. 36. Accordingly, on September 28, 2006, the court issued a memorandum and order, and a final judgment dismissing the case with prejudice. Dkts. 36 & 37. Pursuant to the Rules of Appellate Procedure, Woodson was required to file any notice of appeal with the district clerk within 30 days after the judgment or order was entered—in this case by October 28, 2006. FED. R. APP. P. 4(a)(1). This Woodson did not do. Instead, on November 3, 2006, Woodson filed the motion presently before the court.

---

[1] For a full recitation of the facts, see this court's memorandum and order dated September 28, 2006. Dkt. 36.

In affidavits in support of this motion, Woodson's attorney alleges that he received no notice of the judgment, because the fax notice received by his office was illegible. Further, he claims that despite repeated calls to the clerk's office, he never received a legible copy of the order. Dkt. 40, Ex. A. But, he claims to have received a legible fax of an order dismissing a different case on that same day.[2] *Id.* Lastly, Woodson's attorney claims that fully six days after the court dismissed the case for want of jurisdiction, this court requested a copy of Woodson's response to defendants' motion to dismiss.[3] *Id.* He also attached the affidavit of the employee who allegedly received the garbled fax and called the clerk's office repeatedly to request it be resent.

## ANALYSIS

Under Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure, a non-federal party must file a notice of appeal within 30 days of the entry of judgment or order being appealed. However, if the party does not timely file the notice, the rules offer him two "lifelines" for appeal. *Wilkins v. Johnson*, 238 F.3d 328, 330 (5th Cir. 2001). The first is Rule 4(a)(5) allowing the court to grant an extension of time for filing the notice subject to certain conditions. *Id.* The second is Rule 4(a)(6) giving the court the ability to reopen the time to file a notice of appeal subject to a different set of conditions. *Id.* Woodson pleads both "lifelines" in the alternative.

---

[2] Woodson's attorney had three cases pending before this court at that time, although he was not the lead attorney for one of the cases. The cases were: (1) *Fisher v. Haliburton*, No. H-05-CV-1731; (2) *Smith-Idol v. Haliburton*, No. H-06-CV-1168; and (3) *Woodson v. Haliburton*, No. H-06-CV-2107. They were all cases involving personal injury to civilian convoy drivers in Iraq. They all made identical claims. So much so that due to careless errors, dates from the *Smith-Idol* fact pattern appear in the *Woodson* complaint. *Compare Woodson*, Dkt. 1, at ¶ 103, *with Smith-Idol*, Dkt. 1, at ¶ 103.

[3] Because Woodson's attorney had an almost identical case pending simultaneously in this court, the court is understanding regarding his confusion. However, the request to which he refers was for a copy of his response to the defendants' motion to dismiss in *Smith-Idol*. The requested copy was never received. *Smith-Idol* was subsequently dismissed on October 11, 2006.

### 1. Extension under Rule 4(a)(5).

Rule 4(a)(5) allows the court to grant Woodson an extension of time to file the notice of appeal if he meets two conditions. First, he must file for the extension no later than 30 days from the expiration of the original appeal deadline. FED. R. APP. P. 4(a)(5)(A)(i). Woodson clearly meets that condition because he filed his motion on November 3, 2006—well within the 30 day period after October 28, 2006. Second, Woodson must show excusable neglect or good cause for his tardiness in filing. FED. R. APP. P. 4(a)(5)(A)(ii). "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission" including "the danger of prejudice to the [putative appellant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993). Woodson argues that since he received no notice of the entry of judgment, he has the good cause required for the second prong. However, as explained more fully below, the court finds that Woodson had notice of the entry of judgment. Therefore, Woodson has not demonstrated good cause or excusable neglect for the late filing of his notice.

### 2. Reopening under Rule 4(a)(6).

Alternatively, Woodson argues that the court should reopen the time to file his appeal, because he meets the three prongs under Rule 4(a)(6). For Woodson to qualify for reopening under Rule 4(a)(6) he must meet all three of the required conditions. The threshold question under this inquiry is whether "the court finds that the moving party did not receive notice under Federal Rule

3

of Civil Procedure 77(d)[4] of the entry of judgment or order sought to be appealed within 21 days after entry." FED. R. APP. P. 4(a)(6)(A). Again, Woodson's claim is predicated on whether he received notice of the entry of judgment. Second, Woodson must file the motion to reopen by the earlier of (1) within 7 days of receiving notice of the entry of judgment; or (2) 180 days after judgment is entered. FED. R. APP. P. 4(a)(6)(B). And lastly, the court must find that no party would be prejudiced by reopening the appeal period. FED. R. APP. P. 4(a)(6)(C). Whether Woodson meets the second and third prong of the test is immaterial here, because the court finds that Woodson did receive notice of the entry of judgment on September 28, 2006. Accordingly, Woodson fails to meet the threshold requirement for reopening under Rule 4(a)(6).

### 3. Notice.

"Any written notice of entry received by the potential appellant or his counsel, regardless of how or by whom sent, is sufficient" notice under Rule 4(a)(6)(A). *Wilkins*, 238 F.3d at 332. The court finds that Woodson's counsel received notice pursuant to any one of several theories. First, his affidavit makes clear that he did receive at least one fully legible fax on September 28, 2006. *See* Dkt. 40, Exs. A & B. According to the district clerk's records the only other fax sent to Woodson's attorney on that day was the Memorandum and Order dismissing Woodson's case for want of

---

[4] Rule 77(d) provides:
  Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry in the manner provided for in Rule 5(b) upon each party who is not in default for failure to appear, and shall make a note in the docket of the service. . . . Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.

FED. R. CIV. P. 77(d).

jurisdiction. The fax noticing system notices each instrument separately. But, neither Woodson's attorney nor his employee make any mention of the receipt of either the Memorandum and Order issued the same day or a second illegible fax. Therefore, it is likely that the second fax was, in fact, the Memorandum and Order dismissing the case. If so, the argument that the Final Judgment was illegible and did not provide adequate notice is disingenuous. However, Woodson's attorney alleges that the legible fax was in a different case. Possibly he is referring to the renoticing of the dismissal and final judgment issued in *Fisher v. Haliburton*, No H-05-1731 on September 27, 2006. However, even if that were the case, a fax received from the same court, issuing an order in a similar case with the same causes of action must surely raise some concern in a conscientious lawyer.

Second, the partially legible fax was clear enough to provide notice. The fax attachment was a one page document. *See* Dkt. 40, Ex. B. On the left hand side of the case style, the plaintiff's name appears as "**J** [illegible] **W** [illegible,]" and the defendants' name as "**Ha b** [illegible,] **a C** [illegible]." Additionally, the title of the document is "**F** [illegible] **J** [illegible.]" The signature at the bottom of the document is unimpaired. The court is at a loss to understand why this document did not provoke at least one call to the court's case manager.[5] Of the four similar Haliburton cases pending before this court, two had been dismissed based on political question just days before the partially legible fax of September 28, 2006.[6] Even if Woodson's attorney only knew about the

---

[5] At the time in question, Woodson's attorney had only four cases pending in the entire Southern District of Texas, three of which were in this court. If he had not known to which case the fax belonged, he would have had to make two phone calls at maximum. However, as the court later demonstrates, Woodson's attorney did have notice of the case number in which the order had been issued.

[6] On September 22, 2006, the court dismissed *Fisher v. Halliburton*, No. H-05-1731, and on September 26, 2006, the court dismissed *Lane v. Halliburton*, No. H-06-1971. While it is true that Woodson's attorney was not an attorney of record in the *Lane* case, the attorneys with whom he was a co-counsel on *Fisher* were the same attorneys on *Lane.* So, there is a strong likelihood that

*Fisher* dismissal, as he admits in his affidavit, surely the combination of the *Fisher* dismissal and the partially legible fax described above should have triggered alarm at the very least. Only a monumental act of willful blindness would lead any attorney to ignore this clear signal.

Third, even if the court found that the fax attachment was not legible enough to constitute notice, the fully legible cover sheet provided notice. According to the clerk's office, those faxes sent on September 28, 2006 that were illegible had legible cover sheets. This fact is borne out by the fact that Woodson's attorney's office knew that they had received a fax from the clerk's office and called to receive a replacement. All fax cover sheets for fax notification from this district list (1) the case number, (2) the document number, and (3) the fact that the attached order has been entered. Therefore, Woodson's attorney was clearly notified that an order had been signed in the *Woodson* case. Again, only one phone call to the court's case manager would have produced a fully legible copy of the order immediately. But, heedless of the duty he owed his client, Woodson's attorney did not make that call.

The Fifth Circuit has explained that implicit in the concept of notice under Federal Rule of Civil Procedure 77(d) "is the notion that parties have a duty to inquire periodically into the status of their litigation." *Latham v. Wells Fargo Bank*, 987 F.2d 1199, 1201 (5th Cir. 1993). Not only did Woodson's attorney not check on the status of his case either by calling the court or checking on PACER when prompted by a cryptic fax, but he asked no questions when the court called several days later to request a copy of his response to the defendants' motion to dismiss in *Smith-Idol*. Instead, for over a month Woodson's attorney blithely ignored the enigmatic fax message, the

---

co-counsel communicated with each other about the cases some time within the month after the judgment in *Woodson* was entered.

specific information on the fax cover sheet regarding the entry of an order in his case, and the dismissal of the cases identical to his. The court cannot, in good conscience, find that Woodson had no notice.

### CONCLUSION

The law allows the court to extend or reopen the time to appeal through one of two "lifelines" provided in Rule 4(a)(5) and (6). Rule 4(a)(5) is predicated on the concept of excusable neglect or good cause. Woodson has not demonstrated either. Rule 4(a)(6) requires a threshold finding that the party did not receive notice as provided under Rule 77(d) of the Federal Rules of Civil Procedure. However, based on the facts of this case, the court determines that Woodson did receive notice. Therefore, Woodson does not qualify for either of the "lifelines" available to him. Accordingly, Woodson's motion for extension of time to file notice of appeal, or, in the alternative, motion to reopen the time to file an appeal (Dkt. 40) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on November 15, 2006.

_____
Gray H. Miller
United States District Judge